UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JONATHAN G. MORTON,

                            Plaintiff,

              -v-

CITIBANK, N.A.,

                            Defendant.

18-CV-9048 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Jonathan G. Morton filed this action against Defendant Citibank, N.A. in New York Supreme Court, New York County, on August 30, 2018, alleging that Citibank caused him reputational harm when it wrongfully refused to honor a check that Morton had issued to a client from his law firm's Citibank account. (Dkt. No. 1-1.) On October 3, 2018, Citibank removed the case to this Court, invoking federal diversity jurisdiction. (Dkt. No. 1.) Morton has now moved to remand the case to state court (Dkt. No. 15), and Citibank has filed a cross-motion to dismiss the case for failure to state a claim (Dkt. No. 20). For the reasons that follow, Morton's motion to remand is granted and Citibank's cross-motion to dismiss is denied as moot.

**I.    Background**

      Plaintiff Jonathan G. Morton is a United States citizen who moved from Florida to Japan in May 2015. (Dkt. No. 25 ("Morton Decl.") ¶¶ 2–3, 8.) In 2013, while Morton was living and practicing law in Florida, he registered a single-member law firm, Grant Morton Law PLLC, with the Florida Department of Corporations. (Morton Decl. ¶¶ 4–5; *see also* Dkt. No. 25-1.)

      Morton's law firm maintained an Interest on Lawyer Trust Account ("IOLTA") with Citibank. (Morton Decl. ¶ 4.) In June 2018, Morton issued a check from that IOLTA account to a client of the firm, Michael Gleissner, in the amount of $505,000. (Dkt. No. 1-1 ¶ 9; *see also*

Dkt. No. 22-2.)  According to Morton, Gleissner tried to deposit the check on June 4, 2018, but was notified a few days later that Citibank had dishonored the check.  (Dkt. No. 1-1 ¶¶ 10–11.)

Morton maintains that there had been a sufficient balance in the IOLTA account to satisfy the check but that Citibank nonetheless "willfully and intentionally" dishonored it "based upon a cursory investigation of the instrument," before taking any steps to "clarify the situation."  (Dkt. No. 1-1 ¶ 12; *see also id.* ¶ 13.)  In doing so, Morton maintains, Citibank drove a wedge between himself and "his most essential and long-standing client" (Dkt. No. 1-1 ¶ 15) and "created the reprehensible impression that [Morton] was engaged in commingling and conversion of his client's funds, dishonest, acting in bad faith, or, at the very least, that he was disorganized with his financial operations as an attorney" (Dkt. No. 1-1 ¶ 14).

On August 30, 2018, Morton filed suit against Citibank in New York Supreme Court, New York County, claiming that Citibank's actions had violated the Uniform Commercial Code, as incorporated into New York law, and seeking $100,000 in compensatory damages, as well as attorney's fees.  (Dkt. No. 1-1 ¶¶ 16–21; *see also id.* at 6.)  Morton served Citibank with a summons and the complaint on September 7, 2018 (Dkt. No. 1-1 at 8), and within thirty days thereafter, on October 3, 2018, Citibank removed the case to this Court pursuant to the federal removal statute, 28 U.S.C. § 1441, invoking this Court's diversity jurisdiction (Dkt. No. 1).

After Citibank answered the complaint (Dkt. No. 8), Morton filed a motion to remand the case back to state court, arguing that this case does not fall within this Court's subject-matter jurisdiction (Dkt. No. 15).  Citibank then filed a cross-motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable claim.  (Dkt. No. 20.)  Both motions have been briefed (Dkt. Nos. 16, 23, 24, 27), and the Court turns to their merits.

## II. Legal Standards

As for Morton's motion to remand, a district court must remand a case that has been removed from state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Prop. Clerk v. Fyfe*, 197 F. Supp. 2d 39, 40–41 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 1447(c)).  Where a party seeks remand of a case that has been removed on diversity grounds, "the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof." *Alvarez & Marshal Glob. Forensic & Dispute Servs., LLC v. Cohen-Cole*, No. 14 Civ. 290, 2014 WL 641440, at *1 (S.D.N.Y. Feb. 19, 2014) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)).  And in general, "[t]his Court must 'resolve[] any doubts against removability.'" *Id.* (second alteration in original) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 982 F.2d 1043, 1046 (2d Cir. 1991)).

As for Citibank's motion, Morton's complaint must be dismissed for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), unless it "contain[s] sufficient factual matter" that, if true, would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Of course, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Rather, the complaint must contain specific factual allegations that, if true, "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## III. Discussion

The Court begins with Morton's motion to remand because "[s]ubject matter jurisdiction is a 'threshold question that must be resolved . . . before proceeding to the merits.'" *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206 (2d Cir. 2019) (summary order) (omission in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998)).

In invoking federal subject-matter jurisdiction, Citibank relies on 28 U.S.C. § 1332(a), which provides that the federal district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between," among other things, "citizens of different States," *id.* § 1332(a)(1), or "citizens of a State and citizens or subjects of a foreign state," *id.* § 1332(a)(2). (Dkt. No. 1 ¶ 4.) Because Morton seeks $100,000 in damages, plus attorney's fees (Dkt. No. 1-1 at 6), this case satisfies the requisite amount in controversy, *see Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) (recognizing "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy"). Solely at issue, then, is whether the parties' respective citizenships trigger federal diversity jurisdiction.

No party disputes that Citibank, which is organized under the laws of the United States, is a citizen of South Dakota for jurisdictional purposes (Dkt. No. 1 ¶ 7) or that Morton is a citizen of the United States and not of any other country (Morton Decl. ¶ 2). This is therefore not a case between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Instead, Citibank hopes to show that this is a case between "citizens of different States." *Id.* § 1332(a)(1).

The parties, though, dispute whether Morton, while a United States citizen, is the citizen of any state at all. Morton, who resides in Japan and says he intends to remain there (Morton Decl. ¶ 8), claims that he is not (Dkt. No. 16 at 3). But Citibank, pointing to Morton's activities within the United States, claims that Morton "is either a citizen of Florida or New York for diversity purposes." (Dkt. No. 23 at 1.) If Citibank is correct, this case falls within this Court's diversity jurisdiction. But if Morton is correct, diversity jurisdiction is lacking. *See Foroughi v. Am. Airlines, Inc.*, No. 11 Civ. 4883, 2011 WL 5979716, at *2 (S.D.N.Y. Nov. 30, 2011)

4

("'United States citizens domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state' such that 28 U.S.C. § 1332 does not provide the federal courts 'jurisdiction over a suit to which such persons are parties.'" (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990))).

For purposes of diversity jurisdiction, "[a]n individual's citizenship . . . is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). And a person's domicile, in turn, represents "the place where [the] person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). Typically, a person's domicile "is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." *Liem v. Ackerman*, No. 10 Civ. 9187, 2012 WL 252120, at *1 (S.D.N.Y. Jan. 25, 2012). To establish such a change, the person must demonstrate "[f]irst, a new residence and, second, an intention to remain there." *Id.* at *2. In the Second Circuit, "a sworn statement regarding citizenship will be 'a strong factor in favor of a similar judicial finding,'" absent contradictory evidence. *Chevalier v. USA Express Moving & Storage Inc.*, No. 03 Civ. 9059, 2004 WL 1207874, at *2 (S.D.N.Y. June 2, 2004) (quoting *Herrick Co. v. SCS Comms., Inc.*, 251 F.3d 315, 324 (2d Cir. 2001)). In addition, courts look to factors that include "voting registration, driver's license registration, location of property, location of bank accounts, place of employment, and payment of taxes to determine whether a party has established a physical presence and intent to stay in a domicile." *Id.*

Morton has presented substantial evidence that he is domiciled in Japan.[1] He has declared under penalty of perjury that he has continuously lived in Japan since May 7, 2015, and that he intends to remain there.[2]  (Morton Decl. ¶ 8.)  Further, he has also declared that he has visited the United States only four times—for about one week each—since his move, that he currently lives in a Tokyo apartment with his wife, that he is in the process of securing a loan to purchase a house in Tokyo, that he earns all of his income in Japan, and that he maintains no United States residence and has no intention of doing so.  (Morton Decl. ¶¶ 11, 14–15, 18, 23.)  Moreover, Morton has provided documentary evidence in support of his declarations.  Among other things, he has put into evidence his Japanese residency card (Dkt. No. 25-2); a proposed consulting agreement with a Japanese company (Dkt. No. 25-3); correspondence with a Japanese real estate agent about securing a Tokyo apartment, in which Morton stated that he "plan[ned] to stay in Japan for many years" (Dkt. No. 25-4 at 17); Japanese tax returns (Dkt. No. 25-6; *see also* Morton Decl. ¶ 15); and Japanese bank statements (Dkt. No. 25-7; *see also* Morton Decl. ¶ 16).

---

[1] Citibank makes a cursory argument that the Court should not consider this evidence to the extent that it was filed for the first time with Morton's reply brief.  (Dkt. No. 27 at 3.)  It is true that a court generally "[does] not consider issues raised in a reply brief for the first time because if a [party] raises a new argument in a reply brief [the opposing party] may not have an adequate opportunity to respond to it."  *Saachi v. Verizon Online LLC*, No. 14 Civ. 423, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) (alterations in original) (quoting *Evergreen Nat'l Indem. Co. v. Capstone Bldg. Corp.*, No. 07 Civ. 1189, 2008 WL 926520, at *2 (D. Conn. Mar. 31, 2008)).  Here, though, the court-ordered briefing schedule afforded Citibank the chance to file a brief responding to Morton's reply brief.  (Dkt. No. 14.)  Under these circumstances, the Court sees no injustice in considering the evidence Morton submitted with his reply brief.  *See Saachi*, 2015 WL 1729796, at *1 n.1 (exercising discretion to consider arguments made in a reply brief where the opposing party had been afforded the chance to file a surreply).

[2] Citibank argues that the Court should disregard one of the two affidavits Morton has filed in this case because it lacks certain language that Citibank believes to be mandatory.  (Dkt. No. 23 at 10; *see also* Dkt. No. 17.)  The Court does not rely on the contested affidavit and so need not consider this argument.

Citibank, to be sure, has responded with evidence of its own that, it claims, points in a different direction. In particular, it has put forward evidence that Morton is registered to practice law in New York and Florida (Dkt. No. 21-2); that Morton maintains a law office in New York (Dkt. No. 21-3; *see also* Dkt. No. 21 ¶ 4); that Morton signed a Florida power of attorney in September 2017 (Dkt. No. 21-6); that Morton has identified himself as the registered agent of at least one New York corporation, giving the address of his law offices (Dkt. No. 21-8),[3] and of at least one Florida corporation, giving a Florida address (Dkt. No. 26-4); that Morton has a Florida driver's license and is registered to vote in Florida (Dkt. No. 21-12); and that Morton has periodically traveled to the United States (Dkt. No. 23 at 8). Because Morton bears the burden of demonstrating that he has changed his domicile to Japan from his earlier, conceded domicile in Florida (Morton Decl. ¶ 3), *see Herrick*, 251 F.3d at 324, Citibank argues, his evidence of Japanese residency cannot overcome this evidence of continued activity within the United States (Dkt. No. 23 at 11–15).

The Court is not persuaded, however, that Citibank's evidence of Morton's connections to New York and Florida translates into a showing that Morton maintains, or intends in the future to maintain, his own residence in either of those states. Significantly, nothing in Citibank's evidentiary proffer contradicts the representations Morton has made in his sworn declaration. For example, while Citibank presents evidence that Morton's New York law firm has engaged in considerable litigation efforts within the United States, this evidence contains no indication of Morton's personal involvement—and, indeed, reflects only the participation of an attorney *other*

---

[3] Curiously, Morton's client, Gleissner, is listed as the registered agent of two additional companies operating out of that same New York address. (Dkt. Nos. 26-2, 26-3.) But even if this arrangement raises questions about the nature of Morton and Gleissner's business relations, it sheds no particular light on Morton's domicile.

than Morton.  (Dkt. No. 21-4.)  Similarly, while Morton indicated in a 2016 letter that he was seeking admission to practice law in the Southern District of New York, the letter also indicated that he was "located in Japan" and so would have to "make travel arrangements in advance" for any court appearances.  (Dkt. No. 21-11.)  Finally, Morton's Florida driver's license was issued in 2012, years before he moved to Japan, and while Morton is registered to vote in Florida, he has not actually done so since 2008.  (Dkt. No. 21-12.)

Nor does the fact that Morton bears the burden of proving his change in domicile from Florida to Japan change this Court's conclusion.  In the ordinary case, a party "alleging that there has been a change of domicile has the burden of proving the 'require[d] . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'"  *Palazzo*, 232 F.3d at 42 (alterations in original) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).  Even assuming that the clear-and-convincing standard attaches in the context of a case where the party asserting a change in domicile is the *opponent*, rather than the proponent, of federal jurisdiction, *but see Herrick*, 251 F.3d at 323 (recognizing that, in some cases, the rule "that the party invoking federal jurisdiction bears the burden of proving diversity" and the rule "that the party alleging a change of domicile bears the burden of proving that change" will "cut in opposite directions" and adopting a burden-shifting approach for such cases without noting the clear-and-convincing standard), the Court concludes that Morton has carried his burden.  After all, Morton's affidavit attesting to his Japanese domicile is buttressed by the evidence he has provided, is not contradicted by the evidence Citibank has put forward, and is thus entitled to strong evidentiary weight.  *See Chevalier*, 2004 WL 1207874, at *2.  Even if Citibank has made a showing that Morton holds an interest in an intriguing and ever-evolving web of United States

business enterprises, it has not presented evidence sufficient to persuade the Court that Morton's activities are inconsistent with the Japanese domicile he has professed under penalty of perjury.

Accordingly, the Court concludes that Morton has established by clear and convincing evidence that he is a foreign domiciliary and not a citizen of any state. Because Citibank and Morton are therefore not "citizens of different States," 28 U.S.C. § 1332(a)(1), this case falls outside this Court's diversity jurisdiction. And because Citibank has offered no alternative basis for federal subject-matter jurisdiction over this action, it must be remanded to state court. In light of this conclusion, Citibank's motion to dismiss under Rule 12(b)(6) is denied as moot. *See Cotter v. Milly LLC*, No. 09 Civ. 4639, 2010 WL 286614, at *9 (S.D.N.Y. Jan. 22, 2010). This denial is, of course, without prejudice to the renewal of a similar motion in the state court.

**IV.   Conclusion**

For the foregoing reasons, Morton's motion to remand is GRANTED and Citibank's motion to dismiss is DENIED as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 15 and 20, close the case on this Court's docket, and remand the matter to the New York Supreme Court, New York County.

SO ORDERED.

Dated: July 12, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge